**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DENNIS LITTLETON,

      Petitioner,

                                   CASE NO. 2:09-CV-13727

v.                               HONORABLE DENISE PAGE HOOD
                                   UNITED STATES DISTRICT JUDGE

DEBRA SCUTT,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING**
**LEAVE TO APPEAL IN FORMA PAUPERIS**

      Dennis Littleton, ("Petitioner"), presently confined at the Cotton  Correctional

Facility in Jackson, Michigan, has filed a *pro se* petition for writ of habeas corpus 28

U.S.C.§ 2254, in which he challenges his conviction for first-degree murder, M.C.L.A.

750.316; assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84;

and felony-firearm, M.C.L.A. 750.227b.   For the reasons stated below, the petition for

writ of habeas corpus is DENIED.

**I.  Introduction**

      Petitioner was convicted of the above offenses following a jury trial in the Wayne

County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review pursuant to

28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from an incident that occurred during the early morning
> hours of May 30, 2000, starting at a reputed drug house on the southwest

1

side of Detroit.  The prosecutor presented evidence that defendant operated a cocaine-dealing operation out of the house of Charles Butler, at 2197 Hubbard, that Rob Johnstone created a disturbance at the house on the night in question, and defendant in response shot and killed Johnstone and also shot and wounded Saul Rios, who was with Johnstone at the time.

*People v. Littleton,* No. 234010, * 1 (Mich.Ct.App. December 13, 2002).

Petitioner's conviction was affirmed on direct appeal by the Michigan Court of Appeals. *Id.*  Petitioner's application for leave to appeal to the Michigan Supreme Court was rejected as untimely, because it was filed beyond the 56 day time limit under M.C.R. 7.302 for filing such an application.  *See* Affidavit of Corbin R. Davis, Clerk of the Michigan Supreme Court, dated November 30, 3009. [1]

Petitioner subsequently filed a post-conviction motion for relief from judgment, which the trial court denied. *People v. Littleton,* No. 00-10334 (Wayne County Circuit Court, June 23, 2004).  Apparently a copy of this opinion was never served upon petitioner or his post-conviction counsel.  Petitioner subsequently moved for reconsideration, in which he essentially asked the trial court to set aside the original date of the order denying post-conviction relief and enter a new order so that petitioner could appeal the denial of his post-conviction motion.  The trial court issued an order setting aside the June 23, 2004 but again denied petitioner post-conviction relief. *People v. Littleton,* No. 00-10334 (Wayne County Circuit Court, March 23, 2007). Petitioner appealed to the Michigan Court of Appeals, who dismissed the application for leave to appeal on the ground that petitioner was filing a successive post-conviction motion, which is not permitted under M.C.R. 6.502(G). *People v. Littleton,* No. 284368

---

[1] *See* This Court's Dkt. # 9-13.

2

(Mich.Ct.App. July 30, 2008).  The Michigan Supreme Court subsequently denied petitioner's application for leave to appeal pursuant to M.C.R. 6.508(D). *People v. Littleton*, 484 Mich. 865, 769 N.W.2d 665 (2009).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Whether the trial court erred by failing to give a voluntary manslaughter instruction.

II. Whether the trial court's instruction regarding felony-firearm was erroneous.

III. Whether the prosecutor committed misconduct.

IV. Whether trial counsel was ineffective.

V. Whether trial counsel was ineffective for failing to file a notice of alibi.

VI. Whether the in-court identification of Petitioner was improper and suggestive.

VII. Whether the trial court erred in allowing the jury to review the testimony of two prosecution witnesses.

VIII. Whether the trial court erred in instructing the jury that "they must take the law as I give it to you." [2]

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody

---

[2]  Petitioner did not specifically delineate his claims in his original petition, but in his traverse to respondent's answer, petitioner indicates that he is seeking habeas relief on these eight grounds. Petitioner has also attached to his traverse a motion to amend the habeas petition to clarify the issues that he wishes to raise in his habeas petition.  To the extent that petitioner wishes to amend the petition to clarify that these are the eight claims that he wishes to raise in his petition, the Court will grant the motion.

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

4

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the  Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well

5

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

**A.  Claims # 1 and # 2.  The procedurally defaulted claims.**

Respondent contends that petitioner's first two claims involving the trial court's refusal to instruct the jury on the lesser offense of voluntary manslaughter and the trial court's allegedly erroneous felony-firearm instruction are procedurally defaulted because petitioner has never presented these claims to the Michigan appellate courts and no longer has an available remedy to do so.

A state prisoner seeking federal habeas relief must first exhaust his or her available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U. S. 270, 275-78 (1971).  A prisoner confined pursuant to a Michigan conviction must raise each habeas issue in both the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *See Mohn v. Bock,* 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002).  The exhaustion doctrine, in the context of habeas cases, turns upon an inquiry of whether there are available state court procedures for a habeas petitioner to exhaust his or her claims. *See Adams v. Holland,* 330 F. 3d 398, 401 (6th Cir. 2003).

Petitioner never presented his first or second claims to the Michigan Court of Appeals on his direct appeal. [3]  Although it appears that petitioner raised these two

---

[3]  *See* Dkt. # 9-12.

6

claims in the motion for relief from judgment that he filed with the trial court, petitioner never raised these two claims in his post-conviction appeal with either the Michigan Court of Appeals or the Michigan Supreme Court. [4]

Denial of a motion for relief from judgment is reviewable by the Michigan Court of Appeals and the Michigan Supreme Court upon the filing of an application for leave to appeal. M.C.R. 6.509; M.C.R. 7.203; M.C.R. 7.302. *See Wagner v. Smith,* 581 F. 3d at 414; *See also Nasr v. Stegall,* 978 F. Supp. 714, 717 (E.D. Mich. 1997). A criminal defendant in Michigan must appeal the denial of a post-conviction motion to the Michigan Court of Appeals and the Michigan Supreme Court in order to satisfy the exhaustion requirement of raising his or her claims at all levels of state court review. *See Mohn v. Bock,* 208 F. Supp. 2d at 800. Although petitioner may have presented his first two claims to the trial court in his post-conviction motion, his failure to raise these claims in his post-conviction appeal before the Michigan Court of Appeals and the Michigan Supreme Court precludes a finding of exhaustion. *See Jacobs v. Mohr,* 265 F.3d 407, 416-17 (6th Cir. 2001); *See also Harris v. Lindamood,* 355 Fed. Appx. 940, 941-42 (6th Cir. 2009). Petitioner's first two claims have not been fairly presented to the state courts.

Petitioner has therefore failed to properly exhaust his first and second claims with the state courts. Unfortunately, petitioner no longer has any available state court remedies with which to exhaust these claims. Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-conviction motion for relief from

---

[4] *See* Dkt. ## 9-15, 9-16.

7

judgment. *See Gadomski v. Renico,* 258 Fed.Appx. 781, 783 (6th Cir. 2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999).  Petitioner has no remaining state court remedies with which to exhaust these claims.  If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust.  However, the prisoner will not be allowed to present claims never before presented in the state courts unless he or she can show cause to excuse his or her failure to present the claims in the state courts and actual prejudice to his or her defense at trial or on appeal. *Hannah v. Conley*, 49 F. 3d 1193, 1195-96 (6th Cir. 1995).  A claim of actual innocence will excuse this "cause and prejudice" requirement. *Id.* at 1196, fn. 3.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a petitioner fails to show cause for his or her  procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable

8

evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In his reply brief, petitioner argues that his failure to present these two claims to the state courts should be excused by the ineffective assistance of appellate counsel on his appeal of right.  While ineffective assistance of appellate counsel might excuse petitioner's failure to raise these claims on his direct appeal, it does not excuse petitioner's own failure to correctly exhaust these claims in his post-conviction appeal. *See Gadomski v. Renico*, 258 Fed. Appx. at 784.

In the present case, petitioner has failed to demonstrate any reason to excuse the procedural default of his first or second claims.  Because petitioner has not alleged or demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his first and second claims. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider petitioner's unexhausted claims as grounds for a writ of habeas corpus in spite of the procedural default.  Although petitioner claims that he has an alibi to the crime, for the reasons that will be stated by the Court in greater detail when discussing petitioner's ineffective assistance of counsel claim, *infra,* the shooting in this case occurred in the early morning hours of May 30, 2000.  Petitioner's purported alibi witness, Dana Hudson, signed an affidavit in which she claimed that "on the day and evening of May 30, 2000 I was out of town with Mr. Littleton, trying to make it to Arizona." [5]  Because there was a

---

[5]  *See* Affidavit of Dana Hudson, attached as Exhibit C to petitioner's Supplemental Brief filed with the Michigan Court of Appeals. [Dkt. # 9-12].

9

window of opportunity for petitioner to have committed this murder prior to the time that he was with Ms. Hudson, her purported alibi is insufficiently reliable evidence to establish petitioner's actual innocence, so as to excuse his default. *See e.g. Turner v. Romanowski,* 409 Fed.Appx. 922, 929-30 (6th Cir. 2011). Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review these claims on the merits. *See Malcum,* 276 F. Supp. 2d at 677. Petitioner's first and second claims are procedurally defaulted.

### B. Claim # 3. The prosecutorial misconduct claims.

Petitioner next contends that he was deprived of a fair trial by prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing

10

room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).

Petitioner initially contends that the prosecutor argued facts that had not been introduced into evidence when he argued that the reason that Saul Rios did not identify petitioner at the preliminary examination was because he was afraid of petitioner. Petitioner further contends that the prosecutor committed misconduct by arguing that other witnesses were afraid of petitioner, when there was no evidentiary basis for this argument.

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial; however, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000).

As the Michigan Court of Appeals indicated in rejecting petitioner's claim, *See Littleton,* Slip. Op. at * 2, Charles Butler indicated at trial that after testifying against petitioner at the preliminary examination he left the State of Michigan because there was no safe place for him locally.  Saul Rios testified that he was afraid to testify at trial.  The prosecutor's remarks that the witnesses were afraid of petitioner and more particularly that Rios did not identify petitioner at the preliminary examination because he was afraid of him was a reasonable inference from the evidence.  This purported prosecutorial misconduct was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (Tr. 2/27/2001, p. 250). *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003).

Petitioner next contends that the prosecutor engaged in improper appeals to the jurors' sympathy by stating in closing that the victim "died sitting in his car, shot down like an animal," and, in rebuttal, "[t]hat's not fair to the family of this man, the family of Rob Johnstone."

To the extent that the prosecutor's remarks during closing argument may have improperly evoked sympathy for the murder victim, they would not warrant federal habeas relief, in light of the fact that the remarks were relatively isolated, were a small part of a closing argument which focused heavily on summarizing the evidence presented at trial, and the trial judge informed the jury that the arguments were not evidence. *Byrd,* 209 F. 3d at 532-33. This portion of petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision (Tr. 2/27/2001, p. 244). *See Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999).

Petitioner next contends that the prosecutor committed misconduct by violating a pre-trial ruling and referring to petitioner as a "drug boss". The Michigan Court of Appeals rejected petitioner's claim:

> We disagree. The trial court's actual ruling barred mention of defendant as the boss of drug-selling operations in opening statements only and both the court and defense counsel agreed that if the evidence ultimately supported that theory, the prosecutor could argue it at closing.

> The prosecutor did elicit from one witness that she had "worked for" defendant selling drugs. This information was relevant to the issue of motive, because without a business interest in the reputed drug house defendant had no apparent reason to resort to extreme measures when the murder victim created a scene there. Because this evidence did arise, the prosecutor properly characterized defendant as a person running the drug operations in closing arguments.

12

*Littleton,* Slip. Op. at * 2.

Although petitioner has framed this claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F. 3d 383, 397 (6th Cir. 2009). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).

In the present case, the trial judge did not preclude the prosecutor from introducing evidence that petitioner was involved in the drug trade, but ruled only that the prosecutor could make no references to petitioner being a drug dealer in opening statements without there being an evidentiary basis for such an argument. The court, in fact, indicated that if the evidence supported a theory that petitioner was a drug boss or drug lord, the prosecutor could mention this in closing argument. Because a witness testified that she had worked selling drugs for petitioner, there was a good faith basis for the prosecutor to argue this in closing argument. Because the prosecutor's characterization of petitioner as a "drug boss" or "drug lord" was a reasonable inference from the evidence, petitioner is not entitled to habeas relief on this claim. *See Henley v. Cason,* 154 Fed.Appx. 445, 446-47 (6th Cir. 2005).

Petitioner next contends that the prosecutor did not comply with a discovery order to turn over evidence prior to trial.

To the extent that petitioner is claiming that the prosecutor violated state discovery rules, he would not be entitled to habeas relief. "It is well settled that there is no general constitutional right to discovery in a criminal case." *Stadler v. Curtin*, 682 F.

13

Supp. 2d 807, 818 (E.D. Mich. 2010)(citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)).  A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F. 3d 416, 441 (6th Cir. 2002).

To the extent that petitioner is contending that the violation of the discovery order violated his due process rights, this claim must fail also.  Suppression by the prosecution of evidence favorable to the defendant, upon request, violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner has failed to offer any evidence or argument to show that any of the evidence that the prosecutor did not turn over until trial contained exculpatory material. The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998).  Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *See Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004).  "[M]ere speculation that a government file may contain Brady material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F. 2d

14

1472, 1482 (6th Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999).  Petitioner has failed to show that any of this evidence exculpated him of this crime.  Petitioner is therefore not entitled to habeas relief on his *Brady* claim. *Burns,* 328 F. Supp. 2d at 724.

Petitioner next contends that the prosecutor shifted the burden of proof by commenting on witnesses that petitioner had failed to call.

In this case, the trial court instructed the jury that petitioner was presumed innocent, that the prosecutor had the burden of proving petitioner's guilt beyond a reasonable doubt, and that petitioner did not have to prove his innocence. (Tr. 2/27/2001, p. 245).  In the present case, the prosecution's argument did not deprive petitioner of a fair trial, because any possible prejudice which might have resulted from the comments was cured by the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo,* 302 F. 3d 598, 603-04 (6th Cir. 2002).

Petitioner next contends that the prosecutor committed misconduct by referring to his attorney's arguments as a "smoke screen."

The Sixth Circuit has held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee,* 231 Fed. Appx. 469, 480 (6th Cir. 2007)(quoting *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992)).  A prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury is not an improper disparagement of defense counsel. *Id.*  Likewise, the prosecutor's use of the term "smoke screens" was not an improper attack upon defense counsel, but was simply a remark upon the merits

15

of petitioner's case. *U.S. v. Graham,* 125 Fed. Appx. 624, 634-35 (6th Cir. 2005).

Petitioner is not entitled to habeas relief on his claim that the prosecutor improperly

denigrated defense counsel, because even if the prosecutor's comments about

petitioner's defense were improper, they were not flagrant enough to justify habeas

relief. *See Henley v. Cason,* 154 Fed. Appx. at 447.

Petitioner lastly contends that the prosecutor committed misconduct by allowing

perjured testimony to go uncorrected.

The deliberate deception of a court and jurors by the presentation of known and

false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United

States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the

prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360

U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction

was obtained by evidence that the government knew or should have known to be false,

a defendant must show that the statements were actually false, that the statements

were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d at

343.  However, a habeas petitioner must show that a witness' statement was

"indisputably false," rather than misleading, to establish a claim of prosecutorial

misconduct or a denial of due process based on the knowing use of false or perjured

testimony. *Byrd v. Collins*, 209 F. 3d at 517-18.

Mere inconsistencies in a witness' testimony do not establish the knowing use of

false testimony by the prosecutor. *Coe*, 161 F. 3d at 343.  Additionally, the fact that a

witness contradicts himself or herself or changes his or her story also does not

establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d at 684 (citing *Monroe v.*

16

*Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).  A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

Petitioner has failed to establish that the witnesses committed perjury. Petitioner merely points to inconsistencies between the different witnesses' testimony, as well as inconsistencies between some of the witnesses' prior testimony at the preliminary examination and their testimony at trial.  This is insufficient to establish a perjury claim. *Coe*, 161 F.3d at 343 ("mere inconsistencies" do not show indisputable falsity).  More importantly, petitioner is  not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that any of these witnesses had testified falsely. *See Rosencrantz v. Lafler,* 568 F. 3d 577, 587 (6th Cir. 2009).

Petitioner lastly contends that the cumulative effect of the prosecutor's comments and questions deprived him of a fair trial.  The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d at 447.  Petitioner's claim that the prosecutor's comments and remarks cumulatively deprived him of a fair trial is an inadequate ground for granting federal habeas relief, because it is essentially a cumulative errors claim. *See e.g. Noel v. Norris,* 194 F. Supp. 2d 893, 931-32 (E.D. Ark. 2002).  Petitioner is not entitled to habeas relief on his third claim.

### C.  Claims # 4 and # 5.  The ineffective assistance of counsel claims.

In his fourth and fifth claims, petitioner alleges the ineffective assistance of trial counsel.

17

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Richter*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v.*

18

*Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

> *Harrington v. Richter*, 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over ten years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

19

Petitioner's primary claim is that counsel was ineffective for failing to present an alibi defense.  Petitioner claims that Dana Hudson, his child's mother, would have provided an alibi defense for him.  Although petitioner has not attached any affidavit from Ms. Hudson to his petition, petitioner did attach an affidavit from Ms. Hudson to his *pro se* supplemental brief that he filed with the Michigan Court of Appeals. [6]  In this affidavit, Ms. Hudson claimed that "on the day and evening of May 30, 2000 I was out of town with Mr. Littleton, trying to make it to Arizona."  Ms. Hudson claims that she told petitioner's attorney about this information and was willing to testify on petitioner's behalf, but defense counsel refused to call her to testify.  Petitioner also attached to his supplemental brief a copy of a bench warrant for his arrest for probation violation, which sought petitioner's arrest for the reason that he left Michigan and traveled to Phoenix, Arizona without permission.  The warrant further states that petitioner was arrested by the Phoenix police on May 31, 2000, for money laundering and that charges were pending.  There is no indication from the warrant as to the time of day of the arrest, or how long petitioner was thought to have been in the Phoenix area. [7]

The trial evidence indicated that the shooting took place sometime before 12:30 a.m. in the early morning hours of May 30, 2000. (Tr. 2/22/2001, pp. 50-52, 64-68; 148-54; 199-204; Tr. 2/26/2001, p. 68).

The Michigan Court of Appeals rejected petitioner's claim:

Defendant fails to precisely state when he left Michigan for Arizona. According to the evidence, the shooting in question occurred early in the

---

[6]   *See* Exhibit C, attached to Supplemental Brief on Appeal [this Court's Dkt. # 9-12].

[7]   *See* Exhibit A, attached to Supplemental Brief on Appeal [this Court's Dkt. # 9-12].

morning of May 30, 2000. The evidence that defendant was the shooter, then, does not in fact conflict with the affiant's statement-if indeed the protestations of the mother of defendant's children must be believed-that defendant was on his way to Arizona on the "day and evening" of May 30, or with defendant having been arrested in Arizona on May 31. Accordingly, the facts as alleged by defendant established, at the most, an extremely weak alibi defense.

Further, defendant incurred substantial risk by raising the alibi theory. Although the bench warrant stating defendant had traveled to Arizona without authorization reports only that defendant was arrested for money laundering, defense counsel reported the arresting officials seized $57,000 from defendant, and defendant's purpose for making the trip was "to go buy some drugs." Defense counsel expressly stated that he had opted not to file notice of an alibi defense because he did not want the jury to learn of such potentially prejudicial information. Because the theory in question did not itself actually place defendant in Arizona at the time of the shooting at issue or near enough to it in time as to place in serious doubt the possibility that defendant was the shooter, and because it was important to the defense to minimize evidence of defendant's drug-trafficking activities, the decision not to proceed with an alibi defense was sound trial strategy

*Littleton,* Slip. Op. at * 11-12.

The Michigan Court of Appeals' decision was not unreasonable.  The problem with petitioner's proposed alibi defense is that the shooting occurred around midnight in the early morning hours of May 30, 2000, but Ms. Hudson could only account for petitioner's whereabouts the day and the evening of May 30, 2000, after the shooting had taken place.  Likewise, evidence that petitioner had been arrested in Phoenix, Arizona the day after the shooting would not provide an alibi for petitioner's whereabouts at the time of the shooting.

A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F. 3d 520, 527 (6th Cir. 2004)(internal quotation omitted).  Petitioner's whereabouts  after the crime had been committed "are not exculpatory points." *Id.*  In *Millender,* the Sixth Circuit held that

21

defense counsel's failure to call a witness who stated that he saw petitioner out of state "the Sunday before" a crime which occurred on a Monday was not ineffective assistance, in light of the fact that evidence of petitioner's movements on the day before the crime were not exculpatory. *Id.*   In this case, because there was a window of opportunity for petitioner to have committed the murder before meeting up with Ms. Hudson later in the day of May 30, 2000, petitioner was not prejudiced by counsel's failure to call her as a witness. *See e.g. Fargo v. Phillips,* 58 Fed. Appx. 603, 607-08 (6th Cir. 2003).  Stated differently, because Ms. Hudson could not have provided an "air-tight" alibi defense, counsel was not ineffective for failing to call her testify at trial. *See Moore v. Parker*, 425 F. 3d 250, 253-54 (6th Cir. 2005).

In light of the fact that petitioner's proposed alibi defense would have exposed the jury to evidence that petitioner had been trafficking in illegal drugs, which the prosecution could have exploited to its advantage, counsel's decision not to present this alibi defense appears to have been a valid strategic decision.  In light of the fact that counsel was aware of petitioner's proposed alibi defense, how credible it likely would have been, as well as how such a defense could have opened the door to potentially damaging information, it was valid for the Michigan Court of Appeals to presume that counsel's decision to omit this evidence was trial strategy. *See Cathron v. Jones,* 77 Fed. Appx. 835, 841-42 (6th Cir. 2003).

Petitioner next claims that his trial counsel was ineffective for failing to object to the prosecutorial misconduct that he complains of in Claim # III, *supra.*

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial

22

counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different.  *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).  Because the Court has already determined that the prosecutor's comments and arguments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle,* 457 F. 3d at 528.

Petitioner next alleges that counsel was ineffective for denying petitioner the right to testify on his own behalf. [8]

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000).  A federal court sitting in habeas review of a state court conviction should have "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F. 3d 627, 639 (6th Cir. 2009)(internal citation omitted).  To overcome this presumption, a habeas petitioner must present record evidence that he or she somehow alerted the trial court to his or her desire to testify. *Id.*  Because the record is void of any indication by petitioner that he disagreed with counsel's advice that he should not testify, petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales,* 233 F. 3d at 357.

Petitioner has failed to show that he was prejudiced by counsel's advice

---

[8]  *See* Petition for Writ of Habeas Corpus, p. 67.

23

concerning whether he should testify or not.  Petitioner has failed to provide any details

of his proposed testimony, which is insufficient to establish prejudice based upon

counsel's allegedly deficient advice concerning whether he should testify or not.

*Hodge,* 579 F. 3d at 641 (defendant did not demonstrate prejudice required to establish

a claim of ineffective assistance of counsel based upon defense counsel's alleged

impairment of his right to testify at his capital murder trial where defendant did not

provide details about substance of his testimony and merely speculated that his

testimony would have had an impact on the jury's view of certain witnesses' credibility

and of his involvement in the murders).

Petitioner also claims that trial counsel was ineffective for: 1) failing to

investigate the information for the charged offenses; 2) failing to establish in the record

a lawfully issued arrest warrant for petitioner; 3) failing to gather information from

favorable witnesses; and 4) failing to call witnesses favorable to the defense. [9]

Petitioner has offered no facts or argument as to why counsel was ineffective

with regards to these remaining effective assistance of counsel claims.  Conclusory

allegations of ineffective assistance of counsel, without any evidentiary support, do not

provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir.

1998); *Malcum v. Burt,* 276 F. Supp. 2d at 685.  Because the remaining ineffective

assistance of counsel claims are conclusory and unsupported, petitioner is not entitled

to habeas relief on these claims.

**D.  Claim # 6.  The suggestive identification claim.**

---

[9]  *Id.*

24

Petitioner next contends that Saul Rios' in-court identification of him as his assailant was improper because Rios had initially told the police at the time of the shooting that he had been attacked by "white guys" and that Rios subsequently failed to identify him at the preliminary examination.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188 (1972). Five factors should be considered in determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time of the crime and the confrontation. *Id.* at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See United States v. Wade*, 388 U.S. 218, 240, n. 31(1967). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the

circumstances indicates that the identification is otherwise reliable, no due process violation has occurred.  As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner is not entitled to habeas relief because he has failed to show that Rios' in-court identification was the result of suggestive procedures.  An earlier failure to identify a defendant, or even a positive identification of a different suspect, does not require the exclusion of an in-court or pretrial identification, if the identification is otherwise reliable. See *Howard v. Bouchard,* 405 F. 3d 459, 484 (6th Cir. 2005)(collecting cases).  In the present case, Rios testified that although he did not personally know petitioner, he had "seen him probably around" in front of Butler's house before May 30, 2000, which suggests that petitioner's "face was not a new one to him, either at the shooting or at trial." *Littleton,* Slip. Op. at * 9.  Rios' failure to identify petitioner at the time of the preliminary examination went to the weight of, not the admissibility, of his in-court identification. *Howard,* 405 F. 3d at 484-85.  In light of the fact that two additional eyewitnesses identified petitioner as the shooter, *See Littleton,* Slip. Op. at * 9, Saul Rios' in-court identification was harmless error. *See Keene v. Mitchell,* 525 F. 3d 461, 466 (6th Cir. 2008).  Petitioner is not entitled to habeas relief on his sixth claim.

**E.  Claim # 7.  The readback of testimony claim.**

Petitioner contends that the trial court erred in refusing to grant the jurors' request to have certain testimony re-read to them.

26

There is no federal constitutional law which requires that a jury be provided with a witness' testimony. *See Bradley v. Birkett,* 192 Fed.Appx. 468, 477 (6th Cir. 2006). The reason for this is that there is no U.S. Supreme Court decision that requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request. *See Friday v. Straub,* 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001). A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding. *Bradley,* 192 Fed. Appx. at 477; *Spalla v. Foltz,* 615 F. Supp. 224, 233-34 (E.D. Mich. 1985).

Given the lack of holdings by the Supreme Court on the issue of whether a state trial judge is required to re-read the testimony of witnesses or provide transcripts of their testimony to jurors upon their request, the Michigan Court of Appeals' rejection of petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

## F. Claim # 8. The jury instruction claim.

Petitioner lastly contends that the judge erred in instructing the jurors that "they must take the law as I give it to you."

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire

27

trial that the resulting conviction violates due process, not merely whether the

instruction is undesirable, erroneous, or even "universally condemned", and an

omission or incomplete instruction is less likely to be prejudicial than a misstatement of

the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged

instruction must not judged in isolation but must be considered in the context of the

entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999).  Further, any

ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily

constitute a due process violation. *Waddington v. Sarausad*, 129 S.Ct. 823, 831

(2009).  It is not enough that there might be some "slight possibility" that the jury

misapplied the instruction. *Id.*

In criminal cases, the determination of the law is for the court, and not for the

jury. *See Sparf v. U.S.,* 156 U.S. 51, 102 (1895).  It is within the sole province of the

trial court "to determine the applicable law and to instruct the jury as to that law[.]" *U.S.

v. Hill*, 167 F. 3d 1055, 1069 (6th Cir. 1999).  By contrast, it is the jurors' duty to apply

the law as interpreted by the court and they should be so instructed. *See United States

v. Avery,* 717 F.2d 1020, 1027 (6th  Cir.1983).  In light of the foregoing, the judge's

instruction that the jurors must accept the law as given to them by her did not violate

petitioner's right to a fair trial or to due process.  Petitioner is not entitled to habeas

relief on this claim.

### IV. Conclusion

For the reasons discussed, state court adjudication of the petitioner's claims did

not result in a decision that was contrary to, or involved an unreasonable application of,

clearly established federal law as determined by the United States Supreme Court. Nor did the state court adjudication result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court concludes that the petitioner is not entitled to federal habeas relief on the claims contained in his petition.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v.*

29

*Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that petitioner is **GRANTED** leave to appeal *in forma pauperis* if such an appeal is filed.


Dated:  December 30, 2011       _S/Denise Page Hood_____
                                            DENISE PAGE HOOD
                                            UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed Dennis Littleton, 336591, G. Robert Cotton Correctional Facility, 3500 N. Elm Road, Jackson, MI 49201 and to the attorneys of record on this date, December 30, 2011, by electronic and/or ordinary mail.

                                   _s/Julie Owens_____
                                   Case Manager